IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:19-CV-00336-GCM

| | |
|---|---|
| WILLIAM IVES CONSULTING, INC., <br><br>**Plaintiff,**<br><br>v.<br><br>GUARDIAN IT SYSTEMS, LLC, VOLUNTEER CAPITAL GROUP, LLC, <br>MARK KULJIAN,<br>ERIC WENGER,<br>THOMAS BRAME,<br><br>**Defendants.** | **ORDER** |

**THIS MATTER** comes before the Court upon Defendants' Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedures [ECF Doc. 12], which was filed by Defendants Guardian IT Systems, LLC, Mark Kuljian, Eric Wenger, Thomas Brame, and Volunteer Capital Group, LLC, on September 16, 2019. Plaintiff William Ives Consulting, Inc. filed a Response [ECF Doc. 20] on October 14, 2019, and Defendants filed a Reply [ECF Doc. 21] on October 21, 2019. The Court, now being fully apprised of the facts and circumstances of this Motion, finds the following.

### I. BACKGROUND

Plaintiff provides information technology ("IT") services to commercial business clients, and Defendants Kuljian, Wenger, and Brame are Plaintiff's former employees. Defendant Kuljian was a Senior Engineer, Wenger was a Senior Solutions Architect, and Brame was a Senior Systems Engineer. Plaintiff and Defendants Kuljian, Wenger, and Brame began discussions about

Defendants Kuljian, Wenger, and Brame potentially purchasing Plaintiff. Defendant Volunteer Capital Group, LLC ("VCG") joined these negotiations. Ultimately, no transaction occurred because the parties did not agree on the material terms of the purchase. Following negotiations, Defendants Wenger, Kuljian, and Brame resigned from their positions with Plaintiff. Together with Defendant VCG, Defendants Wenger, Kuljian, and Brame formed Defendant Guardian IT Systems, LLC ("Guardian"), a direct competitor of Plaintiff. Subsequent to the unsuccessful purchase negotiations and creation of Guardian, on July 16, 2019, Plaintiff filed this lawsuit claiming: (1) violation of the Federal Defend Trade Secrets Act; (2) misappropriation of trade secrets under N.C. Gen. Stat. § 66–152 et seq.; (3) breach of employment agreements; (4) breach of non-disclosure agreement; (5) breach of contract accompanied by a tortious act; (6) civil conspiracy; (7) breach of fiduciary duty; (8) violation of the North Carolina Unfair and Deceptive Trade Practices Act; (9) tortious interference with contract as to employment agreements; (10) tortious interference with contract; and (11) tortious interference with prospective economic advantage. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants now seek for the Court to dismiss Counts: (5) breach of contract accompanied by a tortious act; (7) breach of fiduciary duty; (9) tortious interference with contract as to employment agreements; (10) tortious interference with contract; and (11) tortious interference with prospective economic advantage.

## II. DISCUSSION

A defendant may assert that the plaintiff failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Complaints need not give "detailed factual allegations," but a plaintiff must provide more than "a formulaic recitation of the elements of a cause of action" or "labels and conclusions" to avoid dismissal under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007). Factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* Complaints must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court will "accept as true" all factual allegations. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### a. Fifth Cause of Action

In its Fifth Cause of Action, Plaintiff makes a claim for "Breach of Contract Accompanied by Tortious Acts." Defendants argue there is no such cause of action under North Carolina law. Plaintiff has provided no caselaw supporting a cause of action for "Breach of Contract Accompanied by Tortious Acts." Instead, in its Response, Plaintiff argues North Carolina law allows an award of punitive damages in certain circumstances where breach of contract was accompanied by aggravating tortious acts. *See, e.g.*, *Richardson v. Bank of Am. N.A.*, 643 S.E.2d 410, 427–28 (N.C. 2007); *Dailey v. Integon Gen. Ins. Corp.*, 291 S.E.2d 331, 332 (N.C. 1982). Nevertheless, there is no separate cause of action under North Carolina law for "Breach of Contract Accompanied by Tortious Acts," and the Court should not allow for one here. At best, any attempt to fashion appropriate jury instructions for such a cause of action could lead to significant juror confusion. At worst, the cause of action would produce alarmingly inconsistent jury verdicts.[1] Plaintiff has properly requested punitive damages relating to Defendants' allegedly tortious acts in other portions of the Complaint and, thus, will still have an opportunity to recover punitive

---

[1] For these same reasons, the undersigned seeks to discourage the ever-increasing number of plaintiffs who attempt to convert ordinary breach of contract claims into tortious acts.

damages if Defendants' conduct is found tortious. This portion of Defendants' Motion to Dismiss should be **GRANTED**.

### b. Seventh Cause of Action

The Seventh Cause of Action is an alleged breach of fiduciary duty by Defendants Kuljian, Brame, and Wenger ("Employee Defendants"). Defendants maintain there is no fiduciary duty between Employee Defendants and Plaintiff. However, Plaintiff argues the fiduciary duty exists because Employee Defendants acted as an interface between Plaintiff and its respective clients. In its Response, Plaintiff appears to allege that Employee Defendants' relationship with Plaintiff's clients made Employee Defendants agents of Plaintiff. Therefore, according to Plaintiff, a fiduciary duty existed because of this supposed agency relationship.

"A claim for breach of fiduciary duty requires the existence of a fiduciary relationship." *White v. Consolidated Planning, Inc.*, 603 S.E.2d 147, 155 (N.C. Ct. App. 2004). A fiduciary relationship is one where "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence" and, further, "it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other*." *Dalton v. Camp*, 548 S.E.2d 704, 707–08 (N.C. 2001) (quoting *Abbit v. Gregory*, 160 S.E. 896, 906 (1931)) (internal quotation marks omitted) (emphasis in original).

The "broad parameters accorded" to fiduciary relationships "have been specifically limited in the context of employment situations" and, typically, the relationship between an employer and employee is not regarded as a confidential one. *Id.* at 708. Some duties may mean that the employer puts a certain level of confidence in the employee, but there must be something more to find that such a position results in the employee's "domination and influence" over the employer.

*Id.* The level of domination contemplated is found more when one party "figuratively holds all the cards" in a relationship. *Kaplan v. O.K. Techs., L.L.C.*, 675 S.E.2d 133, 139 (2009); *see also Artistic S. Inc. v. Lund*, No. 12 CVS 11789, 2015 WL 8476587, at *15 (N.C. Super. Ct. Dec. 9, 2015) (noting that simply soliciting and collecting monies from clients did not rise to the requisite level of domination and influence to create a fiduciary relationship). Therefore, most relationships between an employer and employee do not rise to the level of creating a fiduciary duty.

Nevertheless, Plaintiff relies on *Sara Lee Corp. v. Carter* to establish that there can be a fiduciary duty where an employee acts as an agent for the employer. 500 S.E.2d 732, 736 (N.C. Ct. App. 1998). "An agent is one who, by the authority of another, undertakes to transact some business or manage some affairs on account of such other, and to render an account of it." *SNML Corp. v. Bank of North Carolina*, 254 S.E.2d 274, 279 (N.C. Ct. App. 1979). The agent is appointed by the principal "primarily to bring about business relations between the latter and third persons." *Id.* If the level of confidence or trust placed in the employee rises to the level of agency, then the court could find that a fiduciary duty existed. *Sara Lee Corp.*, 500 S.E. 2d at 736. The facts in *Sara Lee Corp.* that created a fiduciary relationship between the employee and employer due to agency entailed an agent employee who had complete discretion to purchase products for the company "from whatever source he thought best" and who proceeded to self-deal by purchasing that product from his own partnership. 500 S.E.2d at 736.

Here, *Sara Lee Corp.* is inapposite where Plaintiff has failed to sufficiently allege facts that support finding a fiduciary relationship between Plaintiff and Defendants. Plaintiff never explicitly claims there was an agency relationship between the parties. The facts alleged are that Defendants Kuljian, Wenger, and Brame were employed as a Senior Engineer, Senior Solutions Architect, and Senior Systems Engineer, respectively, and that Employee Defendants were

Plaintiff's designated representatives for client accounts who "formed the primary and personal link between WIC and its respective clients." ECF Doc. 1, ¶¶ 29–31; *id.*, ¶ 33. Additionally, Plaintiff claims it "reposed a special confidence" in Employee Defendants "to act in good faith and with due regard to the interests" of Plaintiff. *Id.*, ¶ 34, ¶ 114. According to the Complaint, Employee Defendants "owed a fiduciary duty" to Plaintiff. *Id.*, ¶ 115. Even construing the Complaint in Plaintiff's favor, there are not enough facts to plausibly support that Employee Defendants had the sole discretion to perform agency responsibilities such as transacting business on behalf of Plaintiff. An employee simply serving as the face of the business to clients is not enough and that is the extent of the facts alleged here.

Neither do any of the facts alleged rise to the level required to create a fiduciary duty between Employee Defendants and their employer where such fiduciary relationships do not typically exist between an employee and employer. There are insufficient facts to plausibly support a finding that Employee Defendants had the level of domination contemplated to create a fiduciary relationship between the employer and employee. *See Dalton*, 548 S.E.2d at 707–08 (N.C. 2001). Plaintiff's allegations rise only to the level of conclusory recitations of the elements of a claim for breach of a fiduciary duty. Therefore, Defendants' Motion to Dismiss as to Seventh Cause of Action, should be GRANTED.

    c. **Ninth and Tenth Causes of Action**

Plaintiff alleges two tortious interference with contract claims. A claim for tortious interference with contract requires a plaintiff to plead five elements:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*Beverage Sys. of the Carolinas, LLC v. Assoc. Beverage Repair, LLC*, 784 S.E.2d 457, 462 (N.C. 2016). To allege that a defendant knew of a contract, "it is not enough to broadly allege that the defendant had knowledge of the contract; rather a complaint must contain facts sufficient to make a good claim that the defendant knew of the contract at issue." *Charah, LLC v. Sequoia Servs., LLC*, No. 18 CVS 4815, 2019 WL 1119076, at *5 (N.C. Super. Ct. Mar. 11, 2019) (internal quotations omitted). Additionally, "induce" has been interpreted "to mean 'purposeful conduct,' 'active persuasion, request, or petitions.'" *Id.* at *6 (quoting *KRG New Hill Place, LLC v. Springs Inv'rs, LLC*, No. 13 CVS 14770, 2015 WL 855664, at *14, 15 (N.C. Super. Ct. Feb. 27, 2015)). These pleading requirements for tortious interference with contract are strictly upheld. *Id.* at *5.

### 1. Ninth Cause of Action

The Ninth Cause of Action is for tortious interference with contract as to employment agreements. This claim pertains to the alleged breaches of Defendant Kuljian's and Defendant Wenger's employment contracts. ECF Doc. 1, ¶ 129. While complaints need not give detailed factual allegations, they must allege more than a formulaic recitation of the elements of the cause of action. *Iqbal*, 556 U.S. at 678. The Complaint states that Defendants had knowledge of the employment contracts, ECF Doc. 1, ¶ 129, but it does not specify *which* Defendants had such knowledge. Further, there are no facts supporting Plaintiff's allegation that Defendants Volunteer Capital, Brame, Guardian, and Wenger intentionally induced Kuljian to breach his employment agreement or that Defendants Volunteer Capital, Brame, Guardian, and Kuljian intentionally induced Wenger to breach his employment agreement. Rather, after negotiations about purchasing Plaintiff and its business were unsuccessful, the Complaint only indicates that Employee Defendants decided to leave their employment positions. Without alleging facts regarding purposeful conduct such as active persuasion, requests, or petitions, the Court cannot find that

Plaintiff met its pleading requirements as to the Ninth Cause of Action. The Court concludes that, as to the Ninth Cause of Action, Defendants' Motion to Dismiss should be **GRANTED**.

### 2. Tenth Cause of Action

Plaintiff's Tenth Cause of Action claims tortious interference with contracts between Plaintiff and its clients. Again, the Complaint must plead facts to support that Defendants had knowledge of the contracts at issue and that purposeful conduct occurred to induce breach of those contracts. *Charah, LLC*, 2019 WL 1119076, at *5–6. Plaintiff has failed to allege facts to even support with which client contracts Defendants may have tortuously interfered.

Plaintiff argues it specified which contracts were at issue by identifying (1) contracts between Plaintiff and its clients regarding IT services and (2) contracts between Plaintiff and its clients for Plaintiff to manage contracts between Plaintiff's clients and third-parties for data back-up, IT security, storage, refreshes and various subscription services. ECF Doc. 1, ¶ 133. At best, this would mean Plaintiff is implying that *all* such contracts were impacted—without ever actually alleging as much. Moreover, Plaintiff would have to also be alleging that Defendants had knowledge of *all* such contracts—again without providing the Court with any facts whatsoever that could support such an allegation. Simply put, the Court cannot discern which contracts are at issue in the Tenth Cause of Action, so it cannot possibly conclude that sufficient facts were alleged to support that Defendants had knowledge of the contracts at issue. Plaintiff need not plead detailed factual allegations, but with only these conclusory assertions in the Complaint there are simply not enough facts to support a plausible claim for relief beyond pure speculation. As to Plaintiff's Tenth Cause of Action, the Court concludes the Motion to Dismiss should be **GRANTED**.

### d. Eleventh Cause of Action

The Eleventh Cause of Action is one for tortious interference with prospective economic advantage. "To establish tortious interference with prospective economic advantage, a plaintiff must show that the defendant, without justification, induced a third party to refrain from entering into a contract with the plaintiff, which would have been made absent the defendant's interference." *MLC Auto., LLC v. Town of Southern Pines*, 702 S.E.2d 68, 79 (N.C. Ct. App. 2010). The "mere expectation of a continuing business relationship is insufficient to establish such a claim." *Id.* "Instead, a plaintiff must produce evidence that a contract would have resulted but for a defendant's malicious intervention." *Id.*

Plaintiff has not met the pleading requirements for tortious interference with prospective economic advantage. Plaintiff's Complaint alleges Defendants "were aware of potential contracts . . . for large-scale IT infrastructure upgrades and ongoing support and maintenance for those clients following such upgrades." ECF Doc. 1, ¶ 138. The Complaint also alleges that "[b]ut for Defendants' wrongful interference, the Prospective Contracts would have ensued." *Id.*, ¶ 141. Even assuming as true that concerns of confidentiality made it inappropriate to identify in the Complaint with which customers or potential customers Defendants interfered, there were other facts Plaintiff could have pled to supports its claim that the contracts would have ensued but for Defendants' interference. Examples of facts that could have supported this element of the cause of action include pleading facts such as the pattern and practice the parties previously followed to re-execute contracts regarding these services, the length of relationships with customers, that Plaintiff had been engaged in ongoing negotiations with prospective clients for a length of time, that contracts had already been drafted, that parties were in the process of drafting contracts, that there were dates set for the contracts to be signed, *et cetera*. Yet, Plaintiff failed to include *any* facts beyond its formulaic recitation of the elements of tortious interference with prospective

economic advantage. Therefore, Defendants' Motion to Dismiss as it pertains to the Eleventh Cause of Action should also be **GRANTED**.

### III. CONCLUSION

For the reasons stated herein, the Court concludes that Defendants' Motion to Dismiss should be **GRANTED**.

**IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss Plaintiff's Fifth Cause of Action is **GRANTED**;
2. Defendants' Motion to Dismiss Plaintiff's Seventh Cause of Action is **GRANTED**;
3. Defendants' Motion to Dismiss Plaintiff's Ninth Cause of Action is **GRANTED**;
4. Defendants' Motion to Dismiss Plaintiff's Tenth Cause of Action is **GRANTED**; and
5. Defendants' Motion to Dismiss Plaintiff's Eleventh Cause of Action is **GRANTED**.

**SO ORDERED**.

Signed: November 3, 2020

Graham C. Mullen
United States District Judge